UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
CRAIG JACKSON,

                                              Plaintiff,

         - against -                                              **OPINION & ORDER**

ALBERT PRACK, H.O. HENRY MOORE, H.O.                              No. 16-CV-7561 (CS)
DOUGLAS WILBURN, SGT. JOHN FRUNZI,
C.O. BRUCE TUCKER, C.O. ABIZ CELAJ, and
C.O. ROBERT LYONS,

                                              Defendants.
------------------------------------------------------------x

Appearances:

Craig Jackson
Stormville, New York
*Pro Se Plaintiff*

Neil Shevlin
Assistant Attorney General
Office of the New York State Attorney General
New York, New York
*Counsel for Defendants*

Seibel, J.

         Before the Court is the motion to dismiss of Defendants Albert Prack, Hearing Officer

("HO") Henry Moore, HO Douglas Wilburn, Sergeant John Frunzi, Correctional Officer ("CO")

Bruce Tucker, CO Abiz Celaj, and CO Robert Lyons (collectively, "Defendants"). (Doc. 64.)

For the following reasons, Defendants' motion is GRANTED.

## I.     **BACKGROUND**

         I accept as true the facts, but not the conclusions, set forth in Plaintiff's Second Amended

Complaint. (Doc. 53 ("SAC").)

## A.    **Facts**

*Pro se* Plaintiff Craig Jackson is an inmate at the Green Haven Correctional Facility in Stormville, New York.  (*Id.* ¶ 6.)  On or around February 14, 2014, while Plaintiff was incarcerated at the Sullivan Correctional Facility in Sullivan County, New York, Defendant CO Tucker told Plaintiff that Plaintiff "was not going to be in this prison much longer."  (*Id.* ¶¶ 6, 14-15; *id.* Ex. A.)  On February 18, Plaintiff filed a grievance against Tucker stating that he was "worried for his safety" and that Tucker "smelled like he had been drinking" and seemed "crazy."  (*Id.* ¶ 16; *id.* Ex. A.)[1]  On February 21, 2014, when Plaintiff was on his way to the gym, Tucker frisked Plaintiff, found a hand-rolled cigarette, confiscated it as contraband, and let Plaintiff go on to the gym.  (*Id.* ¶ 18-19.)  CO Young, not a defendant here, tested the cigarette and found it was positive for marijuana.  (*Id.* ¶ 20.)  On February 24, 2014, Plaintiff was served with a misbehavior report ("MBR"), authored by Young, alleging drug possession in violation of prison rule 113.25 ("February 24 MBR").  (*Id.* ¶ 21; *id.* Ex. E.)  Plaintiff met with a "Tier III assistant" and requested testimony from three witnesses (two of whom agreed) and various documents.  (*Id.* ¶ 22.)

A disciplinary hearing commenced on February 27, 2014, and was presided over by Defendant HO Moore, a plant superintendent.  (*Id.* ¶ 23.)[2]  Plaintiff pleaded not guilty to the violation.  (*Id.* ¶ 24.)  He asked that the cigarette be tested for his DNA, and Moore denied that request.  (*Id.* ¶ 28.)  Evidence was presented in support of the MBR:  Tucker testified that the

_____

[1] In the SAC Plaintiff alleges that the conversation with Tucker occurred on February 18, 2014.  (SAC ¶ 15.)  In his grievance, Plaintiff states that the conversation took place on February 14, 2014.  (*Id.* Ex. A.)

[2] The hearing took place over several days:  February 27 and March 5, 6, 7, 17, and 18, 2014.  (SAC ¶¶ 23, 25, 31, 37; *id.* at 8, 9.)

cigarette "didn't look right" to him, (*id.* ¶ 29); Sgt. Frunzi testified that the cigarette "smelled odd, and definitely didn't look like tobacco," (*id.* ¶ 35); and Young explained that the cigarette tested positive for marijuana, (*id.* ¶ 38). According to Plaintiff, if he had really had drugs or a cigarette on him, he would not have been allowed to go on to the gym. (*Id.* ¶¶ 31, 36.) Tucker "denied" Plaintiff's witnesses because they were not present, but Tucker also said he would call them if present. (*Id.* ¶ 37.) One of Plaintiff's witnesses later testified by phone. (*Id.* Ex. G at 47-49.)[3]

Moore found Plaintiff guilty of the rule violation and sentenced him to 270 days in the Special Housing Unit ("SHU") and a recommended loss of 365 days of good time. (*Id.* ¶ 44.) Plaintiff's sentence was reduced by the prison superintendent to 180 days in the SHU, and then he appealed to Defendant Prack, the New York State Department of Corrections and Community Supervision ("DOCCS") officer in charge of the SHU, who was responsible for reviewing and making determinations of administrative appeals submitted to him by inmates found guilty at Tier III prison disciplinary hearings. (*Id.* ¶¶ 7, 45-46.) On June 5, 2014, Prack modified the sentence to three months in the SHU, six months of loss of packages and other privileges, and recommended loss of good time of three months. (*Id.* ¶ 46; *id.* Ex. K.)

After Plaintiff was "escorted from the gym and locked up" on suspicion of possessing a marijuana cigarette, (*id.* ¶ 47), Frunzi ordered Plaintiff to submit a urine sample, which Lyons collected on February 21 and Celaj tested on February 26, (*id.* ¶¶ 47-49). The sample twice tested positive for THC, and that same day, Celaj wrote and another officer served on Plaintiff an MBR for violation of prison rule 113.24, which prohibits the use of a controlled substance

---

[3] This witness did not see Tucker find the cigarette but saw Plaintiff in the gym for at least half an hour before COs handcuffed Plaintiff and removed him from the gym. (*Id.* Ex. G at 47-49.)

("February 26 MBR"). (*Id.* ¶¶ 49-50.) On March 3, 2014, prior to the disciplinary hearing on the February 26 MBR, Plaintiff met with an individual identified as "Miss Helt," a hearing assistant. (*Id.* ¶ 52.) Plaintiff requested that Helt assist him in procuring DOCCS directives concerning urinalysis, a list of medications that could result in a false-positive urinalysis result, a list of all COs on the 3 to 11 tour who were certified on the testing machine, the certification of the machine operator, the make and model of the machine, and the address and phone number of the machine's manufacturer. (*Id.* ¶¶ 52-53; *id.* Ex. P; *id.* Ex. Q ("Tr.") at 10.) Plaintiff did not receive the testing directive, certification, or lists ahead of time, but did get the information about the machine. (Tr. at 3.) During the hearing, Plaintiff received the directive and a list of medications that could cause a false positive, although Plaintiff challenged the completeness of that list. (*Id.* at 6, 19-21.)

The Tier III disciplinary hearing commenced on March 6, 2014 before HO Wilburn. (SAC ¶ 53.)[4] Plaintiff argued that his prescribed medication "Muranton" caused a false positive (although Muranton was not on the list of drugs that can cause false positives provided by Wilburn) and asserted that the positive result was the product of a mistake or human error.[5] (*See id.* ¶¶ 54, 57, 62-63.) Plaintiff asked to call as a witness a representative from the company that makes the urinalysis machine, but Wilburn denied his request. (*Id.* ¶ 66.) At the end of the hearing Wilburn denied a request for the operator's certificate because Plaintiff had not asked for it during the operator's testimony. (Tr. at 29.) Wilburn also denied Plaintiff's request for the list of other certified COs, finding it to be irrelevant. (*Id.* at 3.)

---

[4] The hearing took place over several days: March 6, 10, 11, and 13, 2014. (SAC ¶¶ 53, 60, 69, 73; Tr. at 32, 33.)

[5] The Court is not aware of any prescription medication called Muranton. Plaintiff may mean Neurontin.

On March 12, 2014, Wilburn found Plaintiff guilty of the rule violation and sentenced him to 180 days in the SHU and 180 days of loss of recreation and other privileges. (*Id.* ¶¶ 72-73.) Plaintiff's sentence was reduced by the superintendent to 180 days in the SHU and 90 days of loss of visits, and then Plaintiff appealed to Defendant Prack, who further reduced the sentence to 90 days in the SHU and 120 days of loss of recreation and other privileges. (*Id.* ¶¶ 74-76.)

Plaintiff initiated an Article 78 proceeding challenging the March 12 determination. (*Id.* ¶ 77.) On June 29, 2015, after Plaintiff had served both ninety-day sentences in the SHU, the March 12 determination was administratively reversed and expunged from Plaintiff's record. (*Id.* ¶ 78; *see id.* Ex. Z.) While he was in the SHU at Southport Correctional Facility – the facility to which he was transferred – Plaintiff alleges that he was "[f]orced to be confined in a cell 23 hours a day while inmates on either side of him flung human feces at each other." (*Id.* ¶¶ 78A-B.) The unbearable stench affected his ability to eat. (*Id.*)

**B.  Procedural History**

Plaintiff's Complaint, dated September 19, 2016, named Wilburn, Prack, Jane Does 1-10, and John Does 1-10 as defendants in their official and individual capacities, and brought claims for denial of due process, intentional infliction of emotional distress, and "atypical and significant hardship" under 42 U.S.C. §§ 1983, 1985, and 1986, arising out of the February 26 MBR and the related disciplinary proceedings. (Doc. 2.) On April 21, 2017, Wilburn and Prack filed a letter requesting a pre-motion conference and stating their intention to move to dismiss for failure to state a claim. (Doc. 19.) At the pre-motion conference on May 18, 2017, the Court granted Plaintiff leave to amend his Complaint, (Minute Entry dated May 18, 2017), which he did on June 14, 2017, naming Celaj, Lyons, and Frunzi as defendants (in addition to Prack and

Wilburn) and bringing claims for illegal search, denial of due process, Eighth Amendment violation, equal protection violation, First Amendment retaliation, and conspiracy, again relating to the February 26 MBR and subsequent proceedings, (Doc. 25 ("AC")). I also set a schedule for Defendants to move to dismiss or answer. (Minute Entry dated May 18, 2017.) Defendants twice requested extensions of time, which I granted. (Docs. 26-27, 31-32.)

On October 23, 2017, Defendants moved to dismiss the AC, (Doc. 33), and Plaintiff timely opposed on November 14, 2017, (Doc. 39). At a conference on September 26, 2018, I granted Defendants' motion in large part, dismissing all claims except Plaintiff's due process claim against Wilburn. (Minute Entry dated Sept. 26, 2018.) I also granted Plaintiff leave to amend his Complaint by November 30, 2018, to add (1) facts to cure deficiencies that I identified concerning his retaliation, conspiracy, Fourth Amendment, Eighth Amendment, and bias-based due process claims against Wilburn; (2) facts to demonstrate that Prack created a policy or custom, or allowed one to continue, that violated Plaintiff's rights; and (3) two unnamed defendants: the CO who allegedly found Plaintiff in possession of marijuana, and a lieutenant, only if Plaintiff could allege in good faith that the lieutenant had reason to doubt the information provided by the then-unnamed CO (who turned out to be Tucker). (*Id.*) Finally, I granted Plaintiff's *Valentin* request and ordered the Attorney General's office to provide assistance identifying the unnamed officers, (*id.*), which it did on October 17, 2018, (Doc. 47). When Plaintiff informed the Court that he did not receive Defendants' *Valentin* letter, (Doc. 48), I ordered Defendants to re-send it and extended Plaintiff's time to file his SAC until December 10, 2018, (Doc. 49).

In his SAC, dated December 4, 2018, Plaintiff brought the following claims under 42 U.S.C. §§ 1983 and 1985: (1) First Amendment retaliation against Prack, Moore, Frunzi, and

Tucker; conspiracy to violate his Fourteenth Amendment due process rights against the same; and failure to intervene against Prack, Moore, and Frunzi, all arising out of the February 24 MBR and subsequent proceedings, (SAC ¶¶ 79-84); and (2) First Amendment retaliation against Prack, Wilburn, Frunzi, Tucker, Celaj, and Lyons; conspiracy to violate his Fourteenth Amendment due process rights against the same; and failure to intervene against Prack, Wilburn, and Frunzi, arising out of the February 26 MBR and subsequent proceedings, (*id.* ¶¶ 85-90).

On December 19, 2018, Defendants requested an extension of time to answer, (Doc. 54), which I granted, (Doc. 55). On February 25, 2019, Defendants filed a letter requesting a pre-motion conference regarding their intended motion to dismiss the SAC. (Doc. 59.) I ordered Plaintiff to respond by March 21, 2019, and scheduled the conference for March 28, 2019. (Doc. 60.) Plaintiff advised the Court that he had not received a copy of Defendants' pre-motion letter, and I ordered Defendants to re-send it. (Doc. 61). On March 26, 2019, Plaintiff filed a letter opposing Defendants' pre-motion letter. (Doc. 62.) At the pre-motion conference on March 28, 2019, Defendants discussed the basis for their proposed motion to dismiss, and I granted Plaintiff leave to amend the SAC by April 29, 2019 to add facts to his existing claims if he so desired, and I advised him that he would not have another opportunity to amend to respond to Defendants' pre-motion letter. I ordered Defendants to move to dismiss or answer by May 29, 2019, Plaintiff to oppose by July 3, 2019, and Defendants to reply by July 17, 2017. (Minute Entry dated Mar. 28, 2019.) I also ordered Defendants to send a copy of the Court's September 26, 2018 bench ruling to Plaintiff. (*Id.*) Plaintiff did not file a Third Amended Complaint.

On May 17, 2019, Plaintiff filed a letter, (Doc. 63), that seemed to be a further response to Defendants' pre-motion letter. On May 29, 2019, Defendants moved to dismiss the SAC, (Doc. 64), and filed a memorandum of law in support of their motion, (Doc. 66 ("Ds' Mem.")).

On June 24, 2019, the Court received a letter from Plaintiff in which he said that he received Defendants' motion, requested a "return date" for his response, and asked about the "status" of the motion. (Doc. 67.) I advised Plaintiff that, as explained at the March 28, 2019 conference, his opposition papers were due July 3, 2019. (Doc. 68; Text Only Entry dated June 27, 2019.) Plaintiff never opposed the motion. On November 12, 2019, Defendants wrote to the Court requesting that their motion be deemed unopposed, (Doc. 69), and I deemed it fully submitted that same day, (Doc. 70).

## II.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted). While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded

factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679.

Deciding whether a complaint states a plausible claim for relief is "a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense." *Id.*

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to

relief.'" *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

Complaints by *pro se* plaintiffs shall be examined with "special solicitude," interpreted

"to raise the strongest arguments that they suggest," *Shibeshi v. City of N.Y.*, 475 F. App'x 807,

808 (2d Cir. 2012) (summary order) (internal quotation marks and emphasis omitted),[6] and "held

to less stringent standards than formal pleadings drafted by lawyers," *Hughes v. Rowe*, 449 U.S.

5, 9 (1980) (*per curiam*) (internal quotation marks omitted). Nevertheless, "threadbare recitals

of the elements of a cause of action, supported by mere conclusory statements, do not suffice,"

and district courts "cannot invent factual allegations that [the plaintiff] has not pled." *Chavis v.

Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

## III. DISCUSSION

### A. Plaintiff's Failure to Oppose

Plaintiff was aware of his opportunity to file opposition papers, (*see* Minute Entry dated

Mar. 28, 2019; Doc. 68), yet Plaintiff failed to submit a memorandum of law or any other

opposition. But the failure to oppose a motion to dismiss does not in itself justify granting the

motion, because "the sufficiency of a complaint is a matter of law that the court is capable of

determining based on its own reading of the pleading and knowledge of the law." *McCall v.*

---

[6] The Court will send Plaintiff copies of all unreported cases cited in this Opinion and
Order.

*Pataki*, 232 F.3d 321, 322-23 (2d Cir. 2000); *see Kucharczyk v. Westchester County*, 95 F. Supp. 3d 529, 536 (S.D.N.Y. 2015). Accordingly, I consider the merits, granting Plaintiff "special solicitude," *Shibeshi*, 475 F. App'x at 808, and taking into account the arguments made in his pre-motion letters, (Docs. 62-63).

**B.**     **February 24, 2014 MBR**

Plaintiff's first claim arises under 42 U.S.C. §§ 1983 or 1985. (SAC ¶ 83.) Defendants argue that this claim is time-barred. (Ds' Mem. at 7.) "The statute of limitations for actions brought pursuant to §§ 1983 and 1985 is three years." *Paige v. Police Dep't of Schenectady*, 264 F.3d 197, 199 n.2 (2d Cir. 2001) (*per curiam*). "Under federal law, which governs the accrual of claims brought under §§ 1983 and 1985, a claim generally accrues once the plaintiff knows or has reason to know of the injury which is the basis of his action." *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994) (citation and internal quotation marks omitted).

Because Plaintiff filed the SAC on December 4, 2018, any §§ 1983 and 1985 claims first brought in the SAC that are based on acts prior to December 4, 2015, are untimely.[7] Plaintiff alleges that Defendants Prack, Moore, Frunzi, and Tucker fabricated the charges of drug possession in the February 24 MBR, took actions to suppress and ignore evidence during the Tier III disciplinary hearing held in February and March 2014, and (as to Prack, Moore, and Frunzi) failed to intervene to stop the prosecution of the February 24 MBR. The latest of these acts

---

[7] When a *pro se* plaintiff is incarcerated, documents are is deemed filed when they are delivered to prison officials for mailing. *Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993). It is unclear exactly when Plaintiff delivered the SAC to the proper officials but, viewed in the light most favorable to the Plaintiff, he may have delivered it as early as December 4, 2018, the date that Plaintiff signed the SAC and, according to his certificate of service, mailed it to Defendants. (SAC at 21, 163.) *See Alvarez v. Doe*, No. 03-CV-7740, 2004 WL 1874972, at *3 (S.D.N.Y. Aug. 13, 2004).

occurred on June 5, 2014, when Prack modified the sentence, (SAC Ex. K at 2), so none of them falls within the applicable statute of limitations period.

Plaintiff argues that the SAC "is merely an 'expansion' of the same incident" described in the original Complaint filed September 26, 2016. (Doc. 62 at 1.) I interpret this to be an argument that the February 24 MBR claims relate back to the date that the original Complaint was filed. Federal Rule of Civil Procedure 15(c)(1)(B) provides that an amendment to a pleading relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." "For a newly added action to relate back, the basic claim must have arisen out of the conduct set forth in the original pleading . . . ." *Slayton v. Am. Express Co.*, 460 F.3d 215, 228 (2d Cir. 2006) (internal quotation marks omitted), *as amended* (Oct. 3, 2006). "[T]he central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading." *Stevelman v. Alias Research Inc.*, 174 F.3d 79, 86 (2d Cir. 1999) (internal quotation marks omitted).

Plaintiff's newly added claims arising out of the February 24 MBR do not "arise[] out of the conduct set forth in the original pleading." *Slayton*, 460 F.3d at 228; *see* Fed. R. Civ. P. 15(c)(1)(B). One could not read the original Complaint and understand that there even was a marijuana cigarette or a February 24 MBR, let alone that Plaintiff was raising any impropriety with respect to that MBR or the subsequent proceedings.[8] Although the newly added claims are related in that the drug test was ordered as a result of the discovery of the marijuana cigarette, the

---

[8] The same is true of the AC, which in any event was not signed until June 9, 2017, (Doc. 25 at 32), after the three-year statute of limitations had run.

two MBRs were served on different dates and described violations of different rules. Each MBR gave rise to its own hearing, and the two hearing tracks took place on different dates and had different hearing officers, witnesses, and arguments. Plaintiff alleges different improprieties as to each. In sum, nothing in the original Complaint – which focused exclusively on the February 26 MBR – was sufficient to give Defendants notice that Plaintiff had claims arising out of the February 24 MBR. Accordingly, Plaintiff's first cause of action pursuant to §§ 1983 and 1985 arising out of the February 24 MBR does not relate back and is dismissed as untimely. I need not reach Defendants' other arguments related to those claims.

### C. **February 26 MBR**

Plaintiff alleges that the events arising out of the disciplinary hearing following the February 26 MBR involved violation of his due process rights, a conspiracy, and retaliation. Defendants argue that he fails to state a claim as to each.

#### 1. **Due Process**

Plaintiff alleges that Wilburn violated his due process rights. Plaintiff also may be challenging the sufficiency of the evidence against him.

To state a claim for a violation of due process, a plaintiff must plead "that the state has created a protected liberty interest and that the process due was denied." *Wright v. Coughlin*, 132 F.3d 133, 136 (2d Cir. 1998).

##### a. Protectable Liberty Interest

As I explained on the record on September 26, 2018, Plaintiff in his AC sufficiently pleaded a protectable liberty interest based on the alleged atypical hardship he experienced while in confinement in the Southport SHU. Defendants have not challenged that conclusion at this stage, but I address it in an excess of caution.

"To identify a protectable liberty interest . . . , prisoners must establish that a given restraint imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id.* (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Relevant factors in determining what constitutes an "atypical and significant hardship" include "(1) the effect of disciplinary action on the length of prison confinement; (2) the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions; and (3) the duration of the disciplinary segregation imposed compared to discretionary confinement." *Id.* (internal quotation marks omitted). In other words, "'[b]oth the conditions and their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical.'" *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (quoting *Sealey v. Giltner*, 197 F.3d 578, 586 (2d Cir. 1999)). Although there is no "bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights," *id.*; *see Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir. 2000), courts in this Circuit routinely find that less than 102 days of solitary confinement does not give rise to a protected liberty interest, *see, e.g.*, *Borcsok v. Early*, 299 F. App'x 76, 78 (2d Cir. 2008) (summary order); *Sealey*, 197 F.3d at 589; *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 375 (N.D.N.Y. 2010). But "SHU confinements of fewer than 101 days could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions." *Palmer*, 364 F.3d at 65; *see Jackson v. Ricks*, No. 02-CV-773, 2006 WL 2023570, at *19 (N.D.N.Y. July 18, 2006) (collecting cases).

Under the normal conditions of SHU confinement in New York, the inmate is placed in a solitary confinement cell, kept in his cell for twenty-three hours a day, permitted to exercise in the prison yard for one hour a day, limited to two showers a week, denied various privileges

available to general population prisoners (such as the opportunity to work and obtain out-of-cell schooling), permitted less frequent and shorter visits than in general population, and allowed fewer books. *Palmer*, 364 F.3d at 65 n.3; *see Sealey*, 197 F.3d at 581 ("An inmate is confined to his cell 23 hours per day, can take no more than three showers per week, has limited library privileges and no telephone privileges."); *Jackson*, 2006 WL 2023570, at *19 (providing a similar description and collecting cases).

Plaintiff has plausibly alleged that the restraint at issue – ninety days in the SHU during which he was subjected to other inmates throwing feces around him as well as an unbearable stench that affected his ability to eat, (*see* SAC ¶¶ 78A-B) – imposed an atypical and significant hardship when compared to normal SHU conditions sufficient to plead a protectable liberty interest. *Cf. Gaston v. Coughlin*, 249 F.3d 156, 165 (2d Cir. 2001) (vacating summary judgment as to Eighth Amendment claim where plaintiff asserted, among other things, that for "several consecutive days . . . his cell was filled with human feces, urine and sewage water"); *Ortiz v. Dep't of Corr. of N.Y.*, No. 08-CV-2195, 2011 WL 2638137, at *6 (S.D.N.Y. Apr. 29, 2011) ("[C]hronic exposure to human waste will give rise to a colorable [§ 1983] claim."), *report & recommendation adopted*, 2011 WL 2638140 (S.D.N.Y. July 5, 2011).

b. <u>Denial of Due Process</u>

"The due process protections afforded a prison inmate do not equate to 'the full panoply of rights' due to a defendant in a criminal prosecution." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)).

> Nevertheless, an inmate is entitled to advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary action taken.

*Id.* The disciplinary action taken must be supported by at least some reliable evidence. *Id.*;

*Smith v. Arnone*, 700 F. App'x 55, 56 (2d Cir. 2017) (summary order); *Smith v. N.Y State Dep't of Corr. Servs.*, No. 15-CV-3455, 2018 WL 2305566, at *4 (S.D.N.Y. May 21, 2018), *appeal dismissed*, No. 18-1787, 2018 WL 6579309 (2d Cir. Oct. 3, 2018). Whether the "some evidence" standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Gaston*, 249 F.3d at 163 (internal quotation marks omitted) (emphasis omitted).

"[T]he inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566. A prisoner's right to call witnesses or present documents "can be denied on the basis of irrelevance or lack of necessity," *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 (2d Cir. 1991) (witnesses); *Richardson v. Williams*, No. 15-CV-4117, 2017 WL 4286650, at *9 (S.D.N.Y. Sept. 26, 2017) (documents), and it is "circumscribed by the penological need to provide swift discipline in individual cases," *Ponte v. Real*, 471 U.S. 491, 495 (1985). In particular, "prison inmates have no general constitutional right to documents relating to drug testing procedures," *Eleby v. Selsky*, 682 F. Supp. 2d 289, 292 (W.D.N.Y. 2010), including "documents showing what substances could cause a false positive result," *Israel v. Bradt*, 228 F. Supp. 3d 237, 240 (W.D.N.Y. 2017). "[A]ny violations" of an inmate's "qualified right" to call witnesses or present documents "are reviewed for harmless error," *Pilgrim v. Luther*, 571 F.3d 201, 206 (2d Cir. 2009) (internal quotation marks omitted), so "an inmate must show that he was prejudiced by the alleged

procedural errors, in the sense that the errors affected the outcome of the hearing," *Colantuono v. Hockeborn*, 801 F. Supp. 2d 110, 114 (W.D.N.Y. 2011).

Defendants on this motion raise arguments that they did not raise on the last motion to dismiss, when I found that Plaintiff had barely pleaded enough for the due process claim to survive. And the SAC presents more information from which I can analyze Defendants' arguments.

First, Plaintiff alleges that Wilburn showed him a list of four medications that can cause a false positive, but that Plaintiff's medication, 2400 grams of "Muranton," was not on it. (SAC ¶ 54.) Plaintiff asked whether that list included all the medications that could cause a false positive, and Wilburn responded, "That's all that was available to me." (*Id.*) Lyons did not contact the prison's medical department, as required by a prison directive, to verify whether Plaintiff was on a medication that could have caused a false positive. (*Id.* ¶¶ 57-58; *see id.* Ex. R.) According to Plaintiff, this amounts to a due process violation. Defendants argue that Wilburn satisfied due process when he gave Plaintiff the list of four medications that could cause false positives. (Ds' Mem. at 12.)

Even assuming that the list Wilburn provided was inadequate and omitted medications that could cause a false positive, and even assuming – contrary to *Israel*, 228 F. Supp. 3d at 240 – that Plaintiff had a right to such a list, any error would be harmless because Plaintiff has not alleged that he was taking any medication that could in fact cause a false positive, *see Powell v. Coughlin*, 953 F.2d 744, 750 (2d Cir. 1991). He has not claimed that "Muranton" can cause a false positive or otherwise plausibly alleged facts showing that the outcome of the hearing likely would have been different had a full list been provided or had the medical department been

consulted. *See Colantuono*, 801 F. Supp. 2d at 115. Absent any facts regarding how he was prejudiced, Plaintiff has not plausibly alleged a due process violation as to the false-positive list.

Next, Plaintiff contends that Wilburn violated his due process rights by refusing to allow Plaintiff to call a witness from the manufacturer of the testing machine. (SAC ¶ 66.) Defendants argue that Wilburn was not required to call such a witness. (Ds' Mem. at 13.) I agree. Plaintiff has no right to testing information. *See Eleby*, 682 F. Supp. 2d at 292-93; *see also Alicea v. Howell*, 387 F. Supp. 2d 227, 234 (W.D.N.Y. 2005) (hearing officer's refusal to call witness from testing machine manufacturer did not violate plaintiff's due process rights). Plaintiff has not plausibly alleged that anything was wrong with the manufacture of the machine, and therefore he has not shown the necessity of the witness, *see Kingsley*, 937 F.2d at 30, nor has he explained how the outcome of the hearing likely would have been different had a witness from the manufacturer been called, *see Powell*, 953 F.2d at 750. And calling a witness from the company would have caused delay, which is another legitimate reason to refuse to call a witness. *See Ponte*, 471 U.S. at 495 (explaining "penological need to provide swift discipline in individual cases"); *Wolff*, 418 U.S. at 566 (right to call witnesses limited because "[p]rison officials must have the necessary discretion to keep the hearing within reasonable limits"). Accordingly, Plaintiff has not plausibly alleged that the denial of the witness amounted to a due process violation.

Plaintiff alleges that Wilburn violated his due process rights when he denied Plaintiff's request for Celaj's testing certification. (SAC ¶ 71.) But Plaintiff has not alleged that Celaj was not certified, so any error here would be harmless. Calling Celaj to testify a second time also would have delayed proceedings. And Plaintiff provides no reason why Wilburn was not entitled to rely on Celaj's own testimony that he was certified. *See Gaston*, 249 F.3d at 163.

Finally, Wilburn's determination was supported by at least "some evidence." Frunzi testified that Plaintiff was found in possession of marijuana and Frunzi then ordered a urinalysis. (*See* Tr. at 22-23.) Lyons testified to the chain of custody of the urine sample that he collected. (*Id.* at 8.) Celaj testified to the results of the urine test. (*See id.* at 12.) While it would have been better to eliminate the possibility of a medication-induced false positive,[9] the record before Wilburn plainly contained evidence that could support his conclusion. *See Gaston*, 249 F.3d at 163.

Further, even if there were a violation, Wilburn is entitled to qualified immunity. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (*per curiam*) (internal quotation marks omitted), or insofar as it was objectively reasonable for them to believe that their conduct did not violate such rights, *see Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987). A government official sued in his individual capacity is entitled to qualified immunity

> (1) if the conduct attributed to him was not prohibited by federal law; or (2) where that conduct was so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time it occurred; or (3) if the defendant's action was objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken.

---

[9] Failure to follow the DOCCS policy to investigate whether an inmate's medication could cause a false positive result is not alone enough to show a constitutional violation. *See DeLee v. Hannigan*, No. 09-CV-838, 2016 WL 5529382, at *3 (W.D.N.Y. Sept. 30, 2016) (violation of prison disciplinary regulation does not show federal constitutional violation), *aff'd*, 729 F. App'x 25 (2d Cir. 2018) (summary order); *Jackson v. Ramey*, No. 07-CV-874, 2010 WL 3761891, at *3 (N.D.N.Y. Sept. 2, 2010) ("[V]iolations of state procedural rules regarding prison disciplinary hearings do not, by themselves, establish federal due process claims under Section 1983.") (footnote omitted), *report & recommendation adopted*, 2010 WL 3761867 (N.D.N.Y. Sept. 20, 2010).

*Munafo v. Metro. Transp. Auth.*, 285 F.3d 201, 210 (2d Cir. 2002) (internal quotation marks, citations, and alterations omitted); *see Creighton,* 483 U.S. at 639 ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action assessed in light of the legal rules that were clearly established at the time it was taken.") (internal quotation marks and citation omitted). Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (internal quotation marks omitted).

While an inmate's limited right to call witnesses or present documents is clearly established, there is no clearly established law that an inmate is entitled to testimony from the manufacturer of a testing machine whenever an inmate denies the results that machine produced. And it is objectively reasonable to rely on test results absent reason to doubt the quality of the machine or the operation of it by the tester. The same is true for an inmate's demand for documentation of the tester's certification. Even assuming it is objectively unreasonable not to consider the possibility of a false positive based on medication, that failing, as discussed above, is harmless, given that Plaintiff does not present facts to support that proposition that his medication in fact could lead to a false positive. And finally, there is no clearly established law that would suggest that the amount of evidence available to Wilburn would not meet the "some evidence" standard.

Thus, Defendants' motion to dismiss Plaintiff's procedural due process claim is granted as to Defendant Wilburn. Plaintiff does not allege how the other Defendants were involved in conducting the hearings arising out of the February 26 MBR. (*See* Ds' Mem. at 14.)

Accordingly, Defendant's motion to dismiss Plaintiff's procedural due process claim is also granted as to Defendants Tucker, Frunzi, Moore, Prack.[10]

### 2. Retaliation

Plaintiff alleges that Defendants retaliated against him in response to the grievance he filed against Tucker by issuing a false MBR on February 26, 2014, violating his due process rights during the drug-use disciplinary hearings, and transferring him to another prison facility. (SAC ¶¶ 85-86, 89.) To plead a First Amendment retaliation claim, he must plausibly allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Dolan v. Connelly*, 794 F.3d 290, 294 (2d Cir. 2015) (internal quotation marks omitted). The Second Circuit has "instructed district courts to approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act." *Id.* at 295 (internal quotation marks omitted). Thus, prisoner retaliation claims must be "supported by specific and detailed factual allegations." *Id.* (internal quotation marks omitted). Conclusory allegations will not suffice. *Id.* As with any other § 1983 claim, the plaintiff must also plausibly allege the defendant's personal involvement in the violation. *Brooks v. Rock*, No. 11-CV-1171, 2014 WL 1292232, at *19 (N.D.N.Y. Mar. 28, 2014); *see DeLee*, 729 F. App'x at 31.

---

[10] To the extent Plaintiff alleged that Prack and Frunzi failed to intervene, these claims are also dismissed. There can be no failure to intervene claim where there is no underlying violation. *Marshall v. City of N.Y.*, 198 F. Supp. 3d 224, 227 (E.D.N.Y. 2016) ("Because there was no underlying violation, there can be no cause of action for failure to intervene . . . .").

Plaintiff fails to allege that any of the Defendants were responsible for the decision to transfer Plaintiff to another facility. Assuming that transfer to be an adverse action, retaliation claims arising out of it are thus dismissed as to all Defendants because Plaintiff does not allege that any of them had personal involvement in that action. *See DeLee*, 729 F. App'x at 31; *Williams v. Hartford*, No. 17-CV-2098, 2019 WL 418092, at *2 (D. Conn. Feb. 1, 2019).

Celaj wrote the February 26 MBR. (SAC ¶ 49.) Wilburn presided over the related disciplinary hearings. (*Id.* ¶ 53.) Retaliation claims against all other Defendants arising out of the drug-use disciplinary hearing are dismissed because they did not take "adverse action against the plaintiff." *See Dolan*, 794 F.3d at 294; *Williams*, 2019 WL 418092, at *2; *Brooks*, 2014 WL 1292232, at *19. As to Celaj and Wilburn, Plaintiff fails to allege any causal connection between Plaintiff's protected activity – filing a grievance against Tucker – and the February 26 MBR and drug-use disciplinary hearings. Indeed, Plaintiff does not allege that either Defendant knew of the grievance. *See Mateo v. Dawn*, No. 14-CV-2620, 2016 WL 5478431, at *8 (S.D.N.Y. Sept. 28, 2016) (dismissing complaint where plaintiff did not "allege or otherwise suggest that Defendants even knew of the complaints filed against other correction officers") (collecting cases).[11] Because a causal connection is required, *see Dolan*, 794 F.3d at 294, and Plaintiff failed to plead facts plausibly supporting the existence of this element, Defendants' motion to dismiss for failure to state a First Amendment retaliation claim is granted.

---

[11] While temporal proximity between the protected speech and the adverse action can support an inference of causation, such an inference requires that the defendant be aware of the speech. *Pavone v. Puglisi*, 353 F. App'x 622, 625 (2d Cir. 2009); *see Thousand v. King*, No. 17-CV-1003, 2019 WL 5197311, at *11 (N.D.N.Y. June 21, 2019), *report & recommendation adopted in part, rejected in part*, 2019 WL 4183887 (N.D.N.Y. Sept. 4, 2019).

### 3.     Conspiracy

Plaintiff further alleges that Defendants conspired to deprive Plaintiff of his civil rights by fabricating the charges of drug use and suppressing or ignoring evidence that Lyons failed to contact the medical department as required.  (SAC ¶¶ 85-86, 89.)  For the same reasons stated on the record on September 26, 2018, Plaintiff has failed to state a claim under either §§ 1983 or 1985.  As in the AC, Plaintiff has provided no more than conclusory allegations of a conspiracy, stating that Defendants "in conspiracy . . . fabricated the charges," (*id.* ¶ 85); "conspired further . . . to violate his Due Process rights . . . when H.O. Wilburn acted in a biased manner by dishonestly suppressing and/or ignoring evidence of Defendant Lyons['s] failure to contact medical," (*id.* ¶ 86); and "conspired together and were involved in this conspiracy . . . when they collectively obstructed justice by violating my Due Process rights and privileges by subjecting me to retaliation with false disciplinary charges," (*id.* ¶ 89).  These allegations do not provide a factual basis to support a claim that Defendants engaged in a conspiracy.  *See Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) ("[T]o maintain an action under Section 1985, a plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.") (internal quotation marks omitted); *Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) (in context of § 1983 conspiracy claim, "complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct") (internal quotation marks omitted).  In any event, because there was no underlying violation, the conspiracy claim must fail.  *Mitchell v. County of Nassau*,

786 F. Supp. 2d 545, 564 (E.D.N.Y. 2011) ("[A] § 1983 conspiracy claim fails as a matter of law where there is no underlying constitutional violation.").

## IV.   <u>LEAVE TO AMEND</u>

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). It is "within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment . . . .'" *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended twice, after having the benefit of two pre-motion letters from Defendants, (Docs. 19, 59), as well as the Court's observations during pre-motion conferences and my ruling on the previous motion to dismiss, (Minute Entries dated May 18, 2017; Sept. 26, 2018; Mar. 28, 2019). In general, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first. Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim*.") (alteration, footnote, and internal quotation marks omitted); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two

opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (internal quotation marks omitted).

Further, Plaintiff has not asked to amend or suggested that he is in possession of facts that would cure the deficiencies identified in this Opinion. Accordingly, the Court declines to grant leave to amend *sua sponte. See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (denial of leave to amend would be proper where "request gives no clue as to how the complaint's defects would be cured") (internal quotation marks omitted); *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if he fails to specify how amendment would cure the pleading deficiencies in his complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) ("[N]o court can be said to have erred in failing to grant a request that was not made."); *id.* (proper to dismiss with prejudice where no indication plaintiff could or would provide additional allegations leading to different result).

## V.  CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.  The Clerk of the Court is respectfully directed to terminate the pending motion, (Doc. 64), enter judgment for Defendants, and close the case.

**SO ORDERED.**

Dated:  November 18, 2019
        White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.